Francisco Almeida-Leon v. WM Capital Management & Co. 202089 Tenerife Real Estate Holdings, LLC v. WM Capital Management 21-1806 Francisco Almeida-Leon v. WM Capital Management, Inc. 21-1807 Attorney Berrios-Perez, please introduce yourself to begin. Good morning again, Attorney Berrios-Perez. We are arguing for all appearance today. If you may please support, this case is about an injunction issued under the Anti-Injunction Act. By the way, I'd like to reserve one minute, Judge Howard. Yes. May I please? Yes. The issue primarily is that the judgment that the injunction purports to protect, I say contradictory judgment, has only now been admitted in Docket 509 that it is contradictory that the real purpose intended by the judgment was to, at all, leave without effect. Resolve is the word that this record uses. A judgment dating from November 2011 issued under the laws of Puerto Rico with no federal ingredient. The injunction commands what state court has decreed is an illegal action, basically disregarding the foreclosure process that is in the nature of public interest in foreclosing real estate mortgages. It disregards minimum price and basically commands that $0 pays almost $5 million, which is irrational. There is no doubt that the injunction may not be issued. So it does not meet the standard established by the Supreme Court of the United States in Smith v. Beyers, 564 U.S. 299. The number of factors that militate against having such an injunction be issued were enumerated in pages 43 through 45, 46 in our opening brief. None of them has been challenged or argued against by Appellee. The underlying problem is that the real controversy was described to the district court from the beginning. The real controversy has always been that Appellee has been insisting that the first mortgage be annulled, be canceled, be disregarded as a condition to proceeding. We told that to the district court, and the U.S. district court acknowledged it, specifically at docket 265, page 48, the first citation there. We even informed in plain language the controversy is a sham. Now the district court has acknowledged in docket 509 that Israel's intent was always to impose a remedy that the federal court, district court, does not have powers to, what is called the remedial powers or remedy jurisdiction. The state court has exclusive in remedial jurisdiction, which has also been acknowledged by the U.S. district court and by the state court in the opinion resolution on order dated August 16, 2021, which is the one that the injunction pursues to leave without effect and impose. Now, the fact that the real controversy was ever disclosed is important because it brings us to that what the court decided was a fictitious controversy, which goes to the root of Article 3 constitutional power to adjudicate cases of controversy, which is additionally complicated by the self-contradictions within the U.S. district court judgment. The U.S. district court judgment declares substantively WM capital may not demand cancellation of the 2011 final judgment, but establishes a procedure that attains exactly that result. So the contradiction within the judgment itself and the contradiction of the United States district court judgment and the state court judgment, we forewarned state district court for the last four or five years, and we've repeated it and repeated it and repeated it. We even told the court, this case is heading to an unnecessary inter-jurisdictional confrontation of constitutional magnitudes. It is unnecessary. Please listen to what we're saying. The real controversy is otherwise, and the order that WM capital is pursuing may not attain a valid result. So the injunction cannot protect a jurisdiction that does not exist because it was a fictitious controversy. There is no jurisdiction to the contradictory judgment may not be harmonized by an injunction because it is already final. The final judgment is one judgment. None of the partial judgment decreed that it is severable from the rest of the case. So we even told the district court when they appointed the agent, the person to sign on behalf of our clients, that whatever that attorney signs may not attain a valid result because it is acting illegally. Now, to surmount everything, to complicate everything, this injunction is being issued by a court that does not have jurisdiction, subject matter jurisdiction, because it's fictitious, and does not have remedy jurisdiction, and it's ordering the court of Puerto Rico, that is acknowledged to have the exclusive, primary, interim jurisdiction over the subject, to destroy the very property that is to be sold and distributed, and then intends to sustain that by arguing that $0 pays $5 million. It is irrational. Under the Anti-Injunction Act, there is no way this can be sustained. Even more, the injunction does not seek to stay anything, but to enforce the judgment that the same district court has acknowledged seeks to exceed the limits of its jurisdiction. The state court opinion dated August 16, 2021, is explicit, is detailed, substantiates all the findings of fact and the conclusions of law, and has decreed that it may not provide full faith and credit and honor the contradictory judgment that the district court of Puerto Rico issued. If the judges have any specific questions, I would like to leave some time to address your questions. We are here to inform you of the best we can. Mr. Barrios, I just have one question. What is the status of the appeal of that August 21 decision? That is a good question, Your Honor. It is mentioned in the briefs, but I will address it. The Honorable Judge Woodcock ordered WM Capital to seek and use the state court process to challenge and obtain, literally stated, this court wants to obtain a final statement on the position that the Superior Court of Puerto Rico expressed on the contradictory judgment. WM Capital requested reconsideration. The reconsideration was denied once, and when it was filed again, the injunction was issued. And WM Capital has refused to seek review, either through certiorari or appeal, arguing that they don't have a guaranteed success on following that course. And then they sought the injunction that we are discussing. The injunction, even though it is called temporare, basically destroys everything and makes it permanent.  I thought that WM did appeal the Superior Court judgment. You're saying that they did not? They did. To a higher court. I don't mean reconsideration. I mean to a higher court. No. My recollection, my knowledge, and I've been handling this case from the beginning, no certiorari, no appeal has been filed by WM Capital. From the resolution dated August 16, 2021, which is the one that the injunction is addressed against. And I have verified with my brother counsels here. The answer is no, no appeal and no certiorari filed and non-pending. Whether they can still appeal depends on whether the period for them to appeal expired or not. That would be another issue that can be attended if the process continues in state court. Thank you, counsel. You've reserved some time. Yes. If you would mute your video, thank you. Mr. Maillard. Good morning, Your Honors. May it please the Court, Attorney Haider Maillard, on behalf of Appley WM Capital. First, Your Honors, I would like to clarify Judge Thompson's question.  Regarding the status of any appeal, no WM Capital did not appeal. It was not necessary to appeal. If we look at Docket 534-1, that is the resolution from the state court stating the effects of this August 16, 2021 resolution. Under Rule 47 of Civil Procedure of Puerto Rico, the 30-day time to appeal is stayed if a party files for reconsideration. WM Capital did file a request for reconsideration within the time allotted under the Rules of Civil Procedure. And after that, Judge Candelario from the state court, essentially under this docket that I'm mentioning, 534-1, stayed the proceedings of the case pending the resolution from this court. So your time to appeal is preserved? Is reserved right now. The other thing I would like to clarify, Your Honor, is there is nothing on the record of the district court where Judge Woodcock ever indicated or ordered WM to appeal. There is no such thing on the record. Was there a suggestion off the record? I'm sorry? Was there a suggestion off the record? The court, when actually issuing the TRO, the court, Judge Woodcock specifically indicated that it would be an essentially moot process or ineffectual process because of the circumstances of this case. He acknowledged that it would be an ineffectual process because it's not a right of appeal. There's not an appeal as of right. First of all, it would depend on the discretion of the Intermediate Court of Appeals. Second of all, the court, Judge Woodcock, understood that this case and the complexities of this case require what would perhaps confuse an Intermediate Court of Appeals. And essentially, under the court's TRO order, the judge says it's not even worth it, basically. Before the TRO was entered, did Judge Woodcock at any time require or suggest that you seek cert or file an appeal in the state proceeding? He did file an order asking the parties to suggest what would come next. And the parties basically wanted the input from the parties as to what would follow and wanted the parties to illustrate the court as to the rules of civil procedure of Puerto Rico. Let me ask the question a different way. Judge Thompson asked you whether Judge Woodcock, perhaps off the record, suggested or required that you seek cert or file an appeal. And your answer was there was nothing on the record and he said during the TRO it would be moot. I'm asking you what is the answer to Judge Thompson's question? The answer is no. There wasn't an order. Judge Howard, you mean that the parties had the opportunity to, off the record, during a hearing, have that conversation? The answer is no, there was no such hearing. Or even a suggestion through the written orders? I don't believe that it can be interpreted that way. What is your friend on the other side referring to when he said that did happen? I'm just trying to understand what happened. I cannot vouch for what Brother Counselor is mentioning. But the record is clear. The orders are there. Judge Woodcock went into detail at length and discussed and allowed the parties the opportunity to present what the law was. And he made the determination that it wasn't necessary to go the route of allowing the Intermediate Court of Appeals to proceed. I hope I answered your questions. Okay. So, if this court finds jurisdiction, the district court's TRO against the Almeidas, against Tenerife, and against the state court, the GMAC court, should be affirmed. We understand that the GMAC court attempted to reverse the final judgment issued by the district court and affirmed by this court. Under the relitigation exception to the Anti-Injunction Act, the district court was substantially justified in issuing the TRO to protect and effectuate its judgment. At the core of this case is an agreement. A settlement agreement signed by the Almeidas, Tenerife, the Federal Deposit Insurance Corporation, and now, in substitution, WM Capital. All issues regarding the agreement were conclusively decided in the final judgment. Now, among the issues decided by the district court and affirmed by this court was the jurisdictional issue. The district court understood that it had jurisdiction to review the settlement agreement. And it also understood and was affirmed by this court that the Almeidas had waived their arguments regarding the final judgment. And even these arguments regarding the minimum bid price that the appliance are raising in this case. So, we understand, your honors, that under the doctrines of res judicata and under the law of the case, these determinations are conclusively determined by the district court. Nevertheless, when we look at the August 16, 2021 decision by the state court, we find a polar opposite of the determinations made by the district court. The GMA court, the state court, determined that it was the court with jurisdiction to review the agreement. It declared primacy over this court and the district court. It determined that the district court's final judgment, as affirmed by this court, is invalid and could not be enforced. It put sanctions on WM and its attorneys for trying to enforce the orders and the final judgment of the district court. And it even went out of its way to defy and disrespect, with all being candid, the district court and this court. Therefore, since at all points, the GMA resolution of August 16 is irreconcilable with the final judgment of the district court, under the relitigation exception of the Anti-Injunction Act, the TRO was substantially justified. And this appeal filed by the Almeidas is nothing but another collateral or another attack against the final judgment affirmed by this court through a decision of March 2021. And it is, this has been going on, these collateral attacks have been going on since 2019. Back then, at least three cases were filed by the Almeidas attacking either the determinations of this court or the court itself. Those attacks were unsuccessful. And at least one of those attacks, in at least one of those attacks, the Almeidas even sued Judge Woodcock personally to obtain an injunction so that he would not issue the final judgment. Evidently, that went nowhere and was dismissed. But this appeal, we are here in this appeal because of the other attack filed by the Almeidas. And your honors, when the final judgment was issued, when the orders to execute were issued by the district court, when this court affirmed that decision, the representative appointed by Judge Woodcock filed to foreclose on the GMAC note in the state court case. Immediately, the Almeidas objected to the request for foreclosure to enforce the final judgment. Judge Woodcock issued an order to show cause why they should not be found in contempt and ordered them to stop the relitigation of the final judgment. They didn't stop. They filed an injunction against WM Capital so that it would not enforce the final judgment of the district court in the state court case. After that, Judge Woodcock issued an order for contempt against the Almeidas. And ordered them again, this is for the third time, ordered them to stop relitigation of the final judgment. And the very same day, they filed a motion with the state court requesting that the state court issue an injunction against the district court. Now, when the orders to execute were issued by the district court, all the Almeidas had to do was to cooperate and enforce the final judgment. And Judge Woodcock gave them patiently, I must stress patiently, gave them all the opportunities to comply. Allowed them plenty of room to comply. They would not. They would defy. They would collaterally attack. So, we understand, your honors, that the TRO was substantially justified. The amount of collateral attacks by the Almeidas, in this case, can only be described as harassment. And the TRO is justified because if it's not affirmed, it risks causing more friction between the state and federal courts. And it also puts at risk lacerating this court's ability to enforce, to protect its rulings. So, under the, again, under the relitigation exception of the Anti-Injunction Act, the district court was more than justified under these circumstances, these extraordinary circumstances, to issue an extraordinary remedy to put a stop to these attacks. Now, the Almeidas claim that supposedly the final judgment cannot be enforced. Under the laws of Puerto Rico, supposedly it cannot be enforced. And putting aside for one moment the fact that the district court's determinations are res judicata and law of the case, it cannot be attacked under the state court. Before saying that it cannot be enforced, the Almeidas should have at least attempted to comply with the final judgment. They did not. As we've seen, the record shows clearly. What they did was attack after attack after attack. They should have stepped aside, let the representative appointed by Judge Woodcock under Rule 78 of the Federal Rules of Serial Procedure do her job. But they would not. But more importantly, Your Honors, the GMAC note can be sold at public auction and it can be foreclosed on under the laws of Puerto Rico because they consented, the Almeidas themselves consented. They consented under the agreement that is within the district court's final judgment. Now, they consented to assign for payment the GMAC note. This is a senior lien. They consented under the agreement, Section 3.1.2 of the agreement. One more minute, counsel. They consented to assign the judgment of the GMAC judgment. And they agreed to the minimum bid price that now they say that cannot be enforced for $3.850 million. And it's worthy of note, Your Honors, that the debtor of the GMAC note in the GMAC case, Emerito Estrada, did not present any objection to the foreclosure under the new minimum bid price. And the reason is obvious. It doesn't have a problem because it's to his benefit to foreclose under a minimum bid price of $3.850 million. Thank you, counsel. If you would mute your audio and your camera. Yes, Your Honor. Mr. Berrios? Attorney Berrios, I'll be very brief. To answer the court's question, docket number 500, dated August 24, 2021, that is eight days after the state court opinion resolution and order, instructs the parties, including Almeida's. I acknowledge that the court's initial reaction, I read, is that the party should have superior Judge Candelario Lopez's order judicially reviewed on an expedited basis with the customary review process presumably available under Puerto Rico law so that this court will know whether this opinion and its order are the final judgment of the state court system. And he goes on to state that it is specifically ordering to avoid unnecessary confrontation testing the judicial authority of the federal and state courts. There was another order, but this one I managed to get for you to precisely quote. That is number one. Number two, I did not listen in all the arguments that counsel Mejia stated the word jurisdiction. The word resolving or annulling the state court judgment. I did not listen to the test of there can be no doubt for issuing the injunction. I did not listen to the concept in rent jurisdiction, nor how the injunction may purport to protect the jurisdiction that the counsel has not addressed. Now, the appeal process in Puerto Rico does not necessarily have to be from a document entitled judgment. There's an appeal as of right. If the document itself, no matter how it is labeled, resolves a specific severable controversy, and it has the effect of that of a judgment. All you have to do is argue that it does have that effect and submit it to the court. The court will decide the court of appeals, whether it is an appeal or not. But for the council, Miguel did not even try. That is all we had to argue on. Thank you. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.